977 P.2d 890

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Terry L. THOMPSON, Defendant–Appellant.**

No. 23801.

Supreme Court of Idaho,
Boise, October 1998 Term.

April 6, 1999.

Wiebe & Fouser, P.A., Canyon County Public Defenders; Thomas A. Sullivan, Deputy Public Defender, Caldwell, for appellant. Thomas A. Sullivan argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

SCHROEDER, Justice.

Terry L. Thompson appeals from the judgments of conviction for sexual battery of a minor and assault and appeals from the sentence for sexual battery of a minor entered against him in the district court.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

Thompson was charged under section 18–1508A of the Idaho Code (I.C.), sexual battery of a minor child sixteen or seventeen years of age, because he had allegedly touched a 16–year–old girl's breasts with his hand and mouth and was at least five years older than the girl. The indictment also charged him with aggravated assault under I.C. §§ 18–901(b) and 18–905(a) because he had allegedly threatened the girl with a knife. The district court ordered a psychological evaluation of Thompson pursuant to stipulation of the parties to determine whether Thompson was competent to stand trial. Based on the psychological report, the district court found that Thompson was competent to stand trial.

Thompson's attorney called him to testify at the trial. Prior to Thompson taking the stand, the trial court granted the State's motion to allow cross-examination regarding a prior felony conviction, limiting the examination to the fact of the conviction. The court prohibited reference to the nature of the prior conviction—i.e., lewd and lascivious conduct.

Later in the trial, Thompson moved for admission of his written psychological evaluation. The State stipulated to the admission. Thereafter, during cross-examination of Thompson's ex-wife, the State requested a ruling on whether it would be allowed to cross-examine her regarding the reasons for her divorce from Thompson, assuming the reason to be Thompson's prior felony convic-

**630**

tion for lewd conduct he engaged in with their daughter. The court initially refused, ruling that the prior conduct was too remote. The State responded that the prior bad act evidence was already in evidence in the psychological report. Thompson moved to strike that portion of the report which referred to his history of sexual abuse, the prior conviction and sentence. The trial court denied the motion. Thompson then moved to withdraw the report from evidence. The court also denied this motion, and the State was allowed to inquire why Thompson and his ex-wife had divorced. She testified that he was having an affair with a 21–year–old woman.

Near the conclusion of the case, the trial judge asked the parties if they had objections to the proposed jury instructions. Thompson inquired about instructions on lesser included offenses. After the instructions on that subject were called to his attention, Thompson replied that the instructions were "satisfactory."

The jury returned verdicts of guilty to the charge of sexual battery of a minor and assault. The trial court sentenced Thompson to a unified 35 years with 15 years fixed for the sexual battery of a minor.

Thompson appeals the convictions and the sentence for sexual battery. He contends that the trial court erred in the following respects: (1) by ruling that if he testified in his own defense, the State could elicit on cross-examination the fact that he had a prior felony conviction, (2) by refusing to strike prejudicial and inadmissible evidence from the psychological report and by refusing to withdraw the report, (3) by allowing his ex-wife to testify as to the reasons she divorced him, and (4) by failing to instruct the jury on the lesser included offense of sexual abuse of a minor. Thompson argues that the cumulative effect of the above errors deprived him of a fair trial.

## II.

### THE TRIAL COURT PROPERLY ADMITTED EVIDENCE OF THOMPSON'S PRIOR CONVICTION ON THE ISSUE OF CREDIBILITY.

Thompson argues that his prior felony conviction for lewd and lascivious conduct under I.C. § 18–1508A should not have been introduced to impeach his credibility at trial.

■■ Rule 609, of the Idaho Rules of Evidence (I.R.E.), provides, in pertinent part:

(a) General rule. For the purposes of attacking the credibility of a witness, evidence of the fact that the witness has been convicted of a felony and the nature of the felony shall be admitted if elicited from the witness or established by public record, but only if the court determines in a hearing outside the presence of the jury that the fact of the prior conviction or the nature of the prior conviction, or both, are relevant to the credibility of the witness and that the probative value of admitting this evidence outweighs its prejudicial effect to the party offering the witness.

I.R.E. 609(a). Under this rule the trial court must apply a two-prong test to determine whether evidence of the prior conviction should be admitted: (1) the court must determine whether the fact or nature of the conviction is relevant to the witness' credibility; and (2) if so, the court must determine whether the probative value of the evidence outweighs its prejudicial impact. *State v. Bush*, 131 Idaho 22, 30, 951 P.2d 1249, 1257 (1997).

■■ In reviewing the trial court's decision as to the first prong concerning relevance, the standard of review is *de novo*. *Id.* (citing *State v. Raudebaugh*, 124 Idaho 758, 766, 864 P.2d 596, 604 (1993)). In reviewing the trial court's decision as to the second prong concerning whether the probative value of the evidence outweighs its prejudicial impact, the standard of review is abuse of discretion. *Id.* at 31, 951 P.2d at 1258.

When reviewing an exercise of discretion on appeal, this Court conducts the following inquiry: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the court acted within the outer bounds of such discretion and consistently with legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason.

*Id.* (citing *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989)).

## A. First Prong—Relevance

In *State v. Ybarra*, 102 Idaho 573, 634 P.2d 435 (1981), the Court recognized that " 'different felonies have different degrees of probative value on the issue of credibility,' " *id.* at 580, 634 P.2d at 442 (quoting *People v. Rollo*, 20 Cal.3d 109, 141 Cal.Rptr. 177, 569 P.2d 771, 775 (1977)), and identified three categories of felonies to determine whether a prior conviction could be used for impeachment. Category one involves crimes such as perjury which are "intimately connected" with the issue of credibility. *Id.* Category two involves crimes such as robbery or burglary which are "somewhat less relevant" to the issue of credibility. *Id.* Finally, category three involves " '[a]cts of violence . . . [which] generally have little or no direct bearing on honesty and veracity.' " *Id.* at 581, 634 P.2d at 443 (quoting *Rollo*, 141 Cal.Rptr. 177, 569 P.2d at 775). With regard to category two crimes, the *Ybarra* court noted:

> "On the other hand robbery, larceny, and burglary, while not showing a propensity to falsify, do disclose a disregard for the rights of others which might reasonably be expected to express itself in giving false testimony whenever it would be to the advantage of the witness. If the witness had no compunction against stealing another's property or taking it away from him by physical threat or force, it is hard to see why he would hesitate to obtain an advantage for himself or friend in a trial by giving false testimony. Furthermore, such criminal acts, although evidenced by a single conviction, may represent such a marked break from sanctioned conduct that it affords a reasonable basis of future prediction upon credibility. . . ."

*Id.* (quoting Ladd, *Credibility Test—Current Trends*, 89 U. PA. L. REV. 166, 180 (1940)).

In *Bush* this Court held that evidence of a prior Wyoming conviction for immoral acts with a child could be introduced for impeachment purposes under I.R.E. 609. 131 Idaho at 31, 951 P.2d at 1258. The Court stated that "[t]he determination whether evidence of a particular felony conviction is relevant to credibility depends on the particular facts and circumstances of each case and must therefore be decided on a case-by-case basis." *Id.* One of the important facts to consider, the Court noted, was the definition of the particular crime. *Id.* In concluding that

Bush's Wyoming conviction was relevant to the issue of credibility, the Court stated:

> A sex crime against a minor does not specifically relate to honesty or veracity as does the crime of perjury, and therefore, does not fall within the first category described in *Ybarra*. Further, the sex crime involved here is not defined in Wyoming law as a violent felony, and therefore does not fall within the third category described in *Ybarra*. Thus, we conclude that under the specific facts of this case, the Wyoming crime falls within the middle category described in *Ybarra*, i.e., a crime which, while not directly showing a propensity to falsify, does disclose a disregard for the rights of others which one might reasonably expect to express itself in giving false testimony if such would be advantageous to the witness. Since Bush had no compunction against engaging in immoral acts with a minor, there is no reason to believe that he would hesitate to gain an advantage for himself in this case by giving false testimony. Committing an immoral act with a minor is the type of "marked break from sanctioned conduct that [ . . . ] affords a reasonable basis" for predicting credibility.

*Id.* (quoting *Ybarra*, 102 Idaho at 581, 634 P.2d at 443).

■ Thompson argues that because his previous conviction of sexual battery, I.C. § 18–1508, is defined as a "crime of violence" by the legislature in I.C. § 19–5307, his prior conviction falls under *Ybarra*'s category three crimes which have little or no direct bearing on honesty and veracity. Idaho Code § 19–5307 enumerates I.C. § 18–1508 (dealing with lewd conduct with a minor child under sixteen) under the heading of "Fines in cases of crimes of violence." Section 19–5307 lists a number of crimes and sets forth the provisions for imposing fines which operate as a civil judgment. The question is whether this legislative classification moves Thompson's prior felony conviction into a category three crime under *Ybarra* as an "act of violence" which has little or no direct bearing on honesty or veracity. The Court believes it does not.

It is clear that the legislature was not attempting to classify crimes for evidentiary

purposes in § 19–5307. The legislature was addressing the unrelated issue of fines and the enforcement of those fines as civil judgments. Should the legislature's classification of § 18–1508 as a crime of violence be controlling, an anomaly would arise that the admissibility of a prior conviction for impeachment purposes could turn on the state in which the act occurred. The Wyoming and Nevada statutes considered in *Bush* and *State v. Muraco*, 132 Idaho 130, 968 P.2d 225 (1998), were essentially the same as I.C. § 18–1508. This Court has approved the use of the convictions under the Wyoming and Nevada statutes for impeachment. *Bush*, 131 Idaho at 31, 951 P.2d at 1258; *Muraco*, 132 Idaho at 132–33, 968 P.2d at 227–28.[1] To say that the Idaho conviction for the same type of conduct could not be used because of I.C. § 19–5307 would lead to an inconsistent result that would not have a rational basis. The Court must look at the nature of the charge for evidentiary purposes, not the unrelated legislative classification dealing with fines and their enforcement.

Thompson also argues that an act only falls under I.C. § 18–1508 if it is committed with the intent of gratifying lust, passions, or sexual desires and is, by definition, a crime of passion. Consequently, Thompson maintains that his prior conviction under this statute falls under category three and should not have been admitted.

The Nevada statute analyzed by this Court in *Muraco* also criminalized certain conduct which was committed with "the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of that child." NEV.REV.STAT. § 201.230 (1987). As previously noted, this Court held that evidence of the defendant's prior conviction for lewdness under the Nevada statute was admissible for impeachment purposes under I.R.E. 609. *Muraco*, 132 Idaho at 133, 968 P.2d at 228. The Nevada statute considered in *Muraco*, the Wyoming statute considered in *Bush* and the Idaho statute considered in this case all criminalize similar conduct. Consistent with *Bush* and *Muraco*, the Court affirms the trial court's conclusion that Thompson's prior conviction

under I.C. § 18–1508A was relevant for impeachment purposes under I.R.E. 609.

### B. Second Prong—Probative Value

Thompson claims that the trial court erred by only engaging in the requisite balancing of probative value versus prejudicial impact with regard to the nature of his prior conviction, not with regard to the fact of his prior conviction.

Idaho Rule of Evidence 609 allows evidence of a prior conviction only if the fact of the conviction or the nature of the conviction, or both, are relevant and if the probative value outweighs its prejudicial effect. I.R.E. 609(a). The trial court commented with regard to the admissibility of Thompson's prior conviction under I.R.E. 609 as follows:

[COURT]: ... Counsel has brought to the Court's attention that the defendant may take the stand but he would like to have an evidentiary ruling before he makes that decision. The evidentiary ruling is regarding his prior criminal record. Counsel for the defendant, Mr. Swafford, has informed the Court that the defendant has a prior felony conviction for lewd and lascivious conduct. The Court finds that that type of conviction does go to the believability, credibility of a witness.

Lewd and lascivious conduct is a type of crime that is deceitful and it would have some probative value under Idaho Rule of Evidence ... [609] to credibility.

The trial court read I.R.E. 609 verbatim and discussed the time limitations set forth under the rule. The court concluded that Thompson's prior conviction fell within the ten-year time limitation and then addressed the State's request to question Thompson about the nature of his prior conviction:

COURT: Under 609 the Court does find involved in this case—and since the credibility of the witness is questioned by the examination as well as this Court observing her demeanor while on the stand I feel that the probative value of the lewd and lascivious conduct, nothing more being said

---

1. In *Muraco*, the Court reserved the question of how it would treat "the characterization of a felony conviction for a similar crime in Idaho."

132 Idaho at 133, 968 P.2d at 228. It is now necessary to address that question because of I.C. § 19–5307.

to the jury than that, that it would not add to the attack for a felony conviction and its prejudicial value far outweighs any of its probative value with regard to the lewd and lascivious conduct action because even though he's not charged with a lewd and lascivious conduct criminal offense in this particular case, the only reason he is not is because the alleged victim was not under 16 years of age.

So the Court will allow if you take the stand, Mr. Thompson, will allow the State to ask if you've been convicted of a felony offense. I've already instructed the jury that if they hear that they can take that and apply that to the credibility. That's whether they would believe you or not. The Court would rule that the nature of the offense, lewd and lascivious conduct, does not add sufficiently enough to the attack of your credibility to outweigh the prejudicial value, so—

(Court is reviewing.)

COURT: Indicates that are relevant to his credibility and that the probative value of admitting this evidence outweighs its prejudicial effect to the party offering the witness. And the Court finds that the probative value does not—or I should say does not outweigh the prejudicial effect so the Court's not allowing the nature of the offense.

Thompson did not request any further clarification of the trial judge's analysis after the judge asked the parties if they would like him to restate his findings.

In *State v. Rodgers*, 119 Idaho 1066, 812 P.2d 1227 (Ct.App.1990), the Court of Appeals affirmed the result and analysis employed by the district court when weighing the probative value of the defendant's prior conviction against its prejudicial impact. The *district court in Rodgers* considered several factors: (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the witness' criminal history, (4) the similarity between the past crime and the crime charged, (5) the importance of the witness' testimony, (6) the centrality of the credibility issue, and (7) the nature and extent of the witness' criminal record as a whole. *Id.* at 1073, 812 P.2d at 1234. The district court concluded that the prior conviction was relevant to the defen-

dant's credibility and that its probative value outweighed the prejudicial effect. The court, therefore, allowed evidence of the fact of the conviction, but to minimize prejudice it did not allow evidence of the nature of the offense. The Court of Appeals held that the district court had not abused its discretion. This Court concurred in the "analysis and disposition" of this issue in its review of the Court of Appeals decision. *State v. Rodgers*, 119 Idaho 1047, 1052, 812 P.2d 1208, 1213 (1991).

The trial court in the present case considered many of the same factors considered in *Rodgers*, including the impeachment value of the prior crime, the remoteness of the prior conviction, the similarity between the past crime and the crime charged, and the centrality of the credibility issue. The trial court recognized that the issue of credibility was particularly central in this case because the evidence consisted of basically the victim's word against Thompson's word. To minimize prejudice the trial court initially ruled that evidence of the nature of Thompson's prior conviction should not be admitted into evidence.

The trial court properly applied the two-prong test in determining whether to admit evidence of Thompson's prior conviction.

### III.

### THE TRIAL COURT ERRED BY REFUSING TO STRIKE PREJUDICIAL AND INADMISSIBLE EVIDENCE FROM THE PSYCHOLOGICAL REPORT AND BY REFUSING TO WITHDRAW THE REPORT.

Thompson moved for the admission of the psychological report which had been prepared for the purpose of determining whether he was competent to stand trial. The report was admitted by stipulation as Defendant's Exhibit A. Thereafter Thompson moved to strike a portion of the report and finally to withdraw the report altogether, when the prosecutor proposed to cross-examine defendant's ex-wife on the cause of their divorce. When Thompson objected, the prosecutor pointed out that the report contained the information that was anticipated in

Thompson's ex-wife's testimony, including information about Thompson's prior sexual history and conviction. The language in the psychological report which Thompson moved to strike read:

> Mr. Thompson also has a history of sexual abuse. He indicated that his daughter reported that he sexually abused her. Mr. Thompson completed the Rider Program in Cottonwood, probation and treatment as a sex offender through the SANE program. According to Mr. Thompson, he did not sexually abuse his daughter. He said that she turned him in because he was pursuing a sexual interest with her friends.

The trial court denied the motion to strike and the request to withdraw the report. Thompson claims the trial court erred by refusing to strike the prejudicial and inadmissible evidence from the report and by refusing to withdraw the report.

■ A threshold question is whether this issue has been properly preserved for appellate review. "The general rule in Idaho is that an appellate court will not consider an alleged error on appeal in the absence of a timely objection to that alleged error at trial." *State v. Stevens,* 126 Idaho 822, 824, 892 P.2d 889, 891 (1995). "[O]rdinarily an objection comes too late for the purpose of review on appeal, if made for the first time after the jury has retired or the cause has been submitted to them, or after the close of the arguments, or on motion for new trial or otherwise, after the verdict has been rendered." *Hayward v. Yost,* 72 Idaho 415, 424, 242 P.2d 971, 976 (1952).

■ Thompson's objection came before the report was published to the jury, before the close of arguments, and before the case had been submitted to the jury. The objection was properly preserved for appellate review.

■ Ordinarily, appellate courts review trial court decisions admitting or excluding evidence under the abuse of discretion standard. *Morris ex rel. Morris v. Thomson,* 130 Idaho 138, 144, 937 P.2d 1212, 1218 (1997). There are no Idaho cases which specifically address the standard of review with regard to a trial court's ruling on a motion to withdraw evidence.

■ The State relies on *State v. Gray,* 129 Idaho 784, 932 P.2d 907 (Ct.App.1997), *cert. denied,* — U.S. ——, 118 S.Ct. 81, 139 L.Ed.2d 39 (1997), for the proposition that when Thompson agreed to the admission of the report, he effectively waived any objection to its admissibility. The Court of Appeals in *Gray,* however, held that agreeing to the admission of evidence which had previously been deemed inadmissible is a waiver of any prior objection. *Id.* at 794, 932 at 917. The *Gray* court did not address whether agreeing to the admission of evidence constituted a waiver of any subsequent objection which is the situation in the present case. *Gray* is not instructive.

The State relies on out-of-state authority for the proposition that a motion to strike previously admitted evidence "will be allowed only in cases where the ground of objection was unknown and could not have been known with ordinary diligence at the time the evidence was received." *Jones v. Spidle,* 446 Pa. 103, 286 A.2d 366, 368 (1971) (emphasis omitted). *See also Murphy v. Waldrip,* 692 S.W.2d 584, 589 (Tex.Ct.App.1985) (before motion to withdraw evidence is granted, moving party must make a showing why there was no objection made at the time the evidence was admitted). These rules, however, have not been adopted in Idaho.

■ The general rule recognized in Idaho is that the trial court has sole discretion in deciding whether to admit or exclude evidence. This discretion, however, is not unlimited. The trial court must exercise reason in making its decision.

The trial court based its denial of Thompson's motion to strike or withdraw the report on the fact that Thompson's counsel had previously stipulated to admission of the report, and the fact that Thompson had already testified that (1) he had been previously convicted, (2) he had mental problems, (3) he had been treated at the state hospital in Blackfoot, and (4) he was currently being treated at the VA Hospital. The trial court stated:

> [W]e got a lot of stuff that's not relevant that was introduced by the defendant and I'm not going to go back and now just cross away things that the defendant

brought into the courtroom and not give the State an opportunity to clarify or explain those things. He indicated he had been convicted, he was sent to Blackfoot, he's had mental problems and the State stipulated for a psychological evaluation, so you're not going to pick and choose portions of it and not bring in other portions. We also now have Department of Health and Welfare records that were stipulated admitted and we have no proof of authenticity now.

In response to Thompson's request to redact only a specific portion of the report relating to the nature of his prior conviction, the following conversation took place:

COURT: Well, if the defendant had not mentioned himself all of these different matters the Court might have ruled differently. I already did rule that I was not going to get into the nature of the offense....;

MR. SWAFFORD: Well, your Honor, I would suggest that Mr. Thompson never mentioned anything about SANE, Cottonwood, et cetera.

COURT: Well, he did when you stipulated to admit Exhibit A. It's a psychological evaluation.

MR. SWAFFORD: Yes, your Honor. However, that would be far more prejudicial than probative of anything. I mean it would prove nothing about this offense.

COURT: Well, I think it has a lot to do with this offense. I think it has a lot to do with Mr. Thompson taking the stand and testifying that he was in jail, he's been in jail, taking the stand and testifying that he has been in Blackfoot, that he's been convicted of a felony and he was sent to Blackfoot for it.

MR. SWAFFORD: That paragraph there contains nothing about Blackfoot or jail.
....

COURT: Well, I'm not undoing what you've already done. You already admitted and stipulated to admit Exhibit A and all these matters are already in here. They were brought in by the defendant himself, not necessarily the defendant's attorney. The defendant's attorney did not ask him to inform the jury of all of these other offenses. As I recall the question was "Have you been convicted of a felony" and then he went on about eight or nine years ago ... and then he went to a mental hospital in Blackfoot and on and on and on, so the Court's not undoing what's already been presented to the jury.

 A factor to be considered when determining a request to redact information or to withdraw an exhibit is whether prejudice would result to the other party; that is, has the opposing party relied on admission of the evidence? For example, has the opposing party foregone calling a witness or failed to have available documents in reliance on the evidence being admitted? The trial court did not address this question. In fact, the State concedes that there would have been no prejudice in withdrawing the exhibit. There was no detrimental reliance on the admission of the report. The trial court's failure to consider prejudice was inconsistent with applicable legal standards.

 A basis for the trial court's refusal to strike portions of the report or allow its withdrawal was that Thompson had opened the door to the evidence by his own testimony. However, contrary to the trial court's conclusion, Thompson's previous testimony did not open the door for admission of this evidence. The fact that Thompson testified that he was presently in jail, that he had been previously convicted of a felony, and that he had been treated for his mental problems at Blackfoot and was now being treated at the VA Hospital for his mental problems, did not suggest that his prior conviction was for lewd and lascivious conduct with his 15–year–old daughter or that he had "completed the Rider Program at Cottonwood, probation and treatment as a sex offender through the SANE program." Nothing in Thompson's testimony or the testimony received from the other witnesses suggested that Thompson had a "history of sexual abuse." Finally, by acknowledging the fact of his prior conviction directly rather than wait for the prosecutor to impeach him, Thompson did not waive his objection to evidence of his prior conviction. *State v. Allen,* 113 Idaho 676, 677–78, 747 P.2d 85, 86–87 (Ct.App.1987).

The trial court failed to apply the proper legal standard when it denied the motion to strike and the request to withdraw the report.

The next question is whether the error in refusing to strike portions of the report or allow withdrawal of the report was harmless.

> An error may be deemed harmless if it does not affect a substantial right of the accused. I.C.R. 52. The determination of whether a substantial right has been affected hinges on whether it appears from the record that the error contributed to the verdict. An error is harmless if, and only if, the appellate court is able to say, beyond a reasonable doubt, that the jury would have reached the same result absent the error.

State v. Brazzell, 118 Idaho 431, 435, 797 P.2d 139, 143 (Ct.App.1990) (citing State v. Boehner, 114 Idaho 311, 315, 756 P.2d 1075, 1079 (Ct.App.1988)). See also State v. Medrano, 123 Idaho 114, 120, 844 P.2d 1364, 1370 (Ct.App.1992); I.R.E. 103 (no error in the admission or exclusion of evidence unless it prejudices a substantial right of the defendant).

 The Court cannot conclude that the error was harmless. The error did prejudice a substantial right of the defendant. The trial court had expressly recognized that the prejudice of allowing evidence of the nature of Thompson's prior conviction outweighed any probative value considering the fact that the nature of the prior offense and the offense presently charged were very similar. The only witnesses for the State were a police officer and the victim, and the trial court determined the credibility of the alleged victim was "questionable." The alleged victim had previously made false allegations of sexual abuse against other persons. Thompson testified at trial and denied the victim's allegations of sexual battery. The Court cannot conclude beyond a reasonable doubt that Thompson would have been convicted without introduction of the objectionable language in the report.

## IV.

## THE TRIAL COURT ERRED BY ALLOWING KAREN THOMPSON TO TESTIFY AS TO THE REASONS SHE DIVORCED THOMPSON.

The trial court allowed Karen Thompson (Karen) to testify on cross-examination why she divorced Thompson—because he was having an affair with a 21-year-old woman. The trial court indicated that because she testified that she was formerly married to Thompson, this testimony was within the scope of direct examination. However, the substantive testimony on direct was limited to the issue of the alleged victim's advance planning of making a tape of her conversation with Thompson and her prior accusations against other men.

The State claims that Thompson failed to object to the State's inquiry of Karen concerning the reason she divorced Thompson. However, Thompson did make a timely objection, both at the time the State first requested a side-bar with the court to discuss whether the State could cross-examine Karen as to the reasons for her divorce from Thompson and immediately after the State asked Karen if she had divorced Thompson.

 The State's purpose for eliciting Karen's testimony as to the reason she divorced Thompson was to show motive under I.R.E. 404(b). The State assumed Karen would testify that the reason she divorced Thompson was because he was convicted for engaging in lewd and lascivious conduct with their 15-year-old daughter. The State also argued that because evidence of the fact that Thompson had been previously convicted for engaging in lewd conduct with his daughter was already in evidence through the psychological report, the State should be allowed to pursue its line of questioning regarding why Karen divorced Thompson. The trial court allowed the State to ask Karen why she divorced Thompson because it apparently believed evidence of the reason why she divorced Thompson was already in evidence. As noted, this evidence from the psychological report should not have remained in the record. The answer Karen gave in response to the prosecutor's question introduced additional evidence that was not admissible beyond what was in the report.

## V.

## CONCLUSION

The trial court abused its discretion when it refused to strike evidence of the nature of Thompson's prior conviction from the psy-

chological report, or allow withdrawal of the report, and when it allowed the State to cross-examine Karen Thompson as to the reason she divorced Thompson. The Court is unable to conclude beyond a reasonable doubt that Thompson would have been convicted despite the trial court's error. The judgments of conviction and sentence are vacated, and the case is remanded for a new trial. It is not necessary to address the other issues raised on appeal.

Chief Justice TROUT and Justices SILAK and WALTERS, CONCUR.

Justice Pro Tem JOHNSON, CONCURRING IN PART AND DISSENTING IN PART.

I concur in all of the Court's opinion except part II (The Trial Court Properly Admitted Evidence of Thompson's Prior Conviction on the Issue of Credibility), from which I respectfully dissent.

In my view, the I.C. § 19–5307 characterization is important. Otherwise, I make no sense out of the analysis of the statutes in the other states in *Bush* and *Muraco*.

Also, in my view, the trial court did not engage in any weighing of the "fact" of the prior conviction, only its "nature." When stripped of its nature, as the trial court did, I think the trial court then needed to weigh the probative value against the prejudicial effect concerning the fact of conviction. As I read the record, the trial court did not do so.